UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES DONOVAN et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 19-cv-06020 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| THERESA EAGLESON, Director of the | ) | |
| Illinois Department of Healthcare and | ) | |
| Family Services, and GRACE HOU, | ) | |
| Secretary of the Illinois Department of | ) | |
| Human Services, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

The Plaintiffs are a group of Illinois nursing-home residents who are entitled to receive long-term care benefits under the Federal Medicaid Act, 42 U.S.C. §1396 *et seq*.[1] R. 1, Compl.[2] According to the residents, the Illinois Department of Healthcare and Family Services (widely known in Medicaid circles as "HFS") and the Illinois Department of Human Services (known by the acronym "DHS") have ostensibly processed and approved their eligibility applications. But the problem is that, as a practical matter, HFS and DHS are not actually reimbursing the nursing homes for providing those long-term care benefits to the Plaintiffs. Thus, the Plaintiffs allege that HFS and DHS are violating their due process rights as well as certain provisions of the Medicaid Act. Specifically, the Plaintiffs have named as defendants Theresa

---

[1]The Court has federal question jurisdiction under 28 U.S.C. § 1331.

[2]Citations to the record are noted as "R." followed by the docket number, and when necessary, the page or paragraph number.

Eagleson, in her official capacity as Director of HFS, and Grace Hou, in her official capacity as Secretary of DHS. The Defendants have now moved to dismiss the complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1), or alternatively, for failure to state a claim under Rule 12(b)(6). R. 11. For the reasons discussed below, the motion to dismiss is granted.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court may also look to facts outside the Complaint in considering the Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, or, in this case, standing. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

To make sense of the facts in this case, it is necessary to first outline the general application process for long-term care benefits—which, for our purposes, just means residency in a nursing home—under the Medicaid Act. To start, HFS and DHS are the state agencies responsible for administering the federal Medicaid program in Illinois. Compl. ¶¶ 10-11. In order to receive long-term care benefits, an Illinois resident must complete a two-part application process. First, the resident must submit a general application to receive Medicaid benefits. *Id.* ¶ 12. This application is processed by HFS, which issues an eligibility determination. *Id.* ¶ 13. Then, separate from the general-eligibility application, a resident must also specifically request long-term care benefits. *Id.* ¶ 15. The long-term care request can be made either simultaneously with the eligibility application or after the eligibility

application is already approved. *Id*. ¶ 28. In this case, the Complaint is not entirely clear about which specific procedure each Plaintiff followed or the exact timing of all of the applications. But it is undisputed that all 13 Plaintiffs have gone through one of the application routes, and all of them appear to have been approved for Medicaid benefits in general. Compl. ¶¶ 1-2. It is also undisputed that at least some of them have been specifically approved for long-term care benefits: June Douglas, Dolores Lampe, Grace Irene Palmer, James Daly, and Barbara Dickman. *Id*. ¶¶ 1, 80, 88. And finally, it is undisputed that all of them are currently residing in nursing homes and receiving long-term care services.[3] *Id*. ¶¶ 74, 86, 102, 114, 127, 143, 155, 169, 181, 196, 211, 228, 243.

In addition to that application process, there is a separate application pathway for *nursing homes*—which are responsible for providing long-term care services—to receive financial reimbursements from HFS and DHS. The parties refer to this separate application process as the MEDI (which stands for "Medical Electronic Data Interchange") system. Specifically, nursing homes must submit what is called a MEDI "admission packet" to HFS for every resident who receives long-term care benefits. This is required regardless of whether a resident was approved for Medicaid long-term care services before or after entering the nursing home; either way, when the resident enters a nursing home and begins to receive long-term care, a MEDI admission packet must be submitted for each resident. Compl. ¶¶ 28-29. If the MEDI admission is approved, then the nursing home presumably receives reimbursements

---

[3]As the Defendants point out, two of the original Plaintiffs are unfortunately now deceased. *See* R. 29-1, Defs.' Reply Br., Exh. 1, McCurdy Aff. ¶ 5.

for any long-term care services provided by the nursing home beginning on the date that the beneficiary was "admitted" into the facility.

The Plaintiffs allege, however, that HFS and DHS reject MEDI admissions for all sorts of reasons. For example, applicants are required to complete a needs-screening (referred to by yet another Medicaid acronym, "OBRA") for long-term care, but the agencies will reject a MEDI admission if the OBRA paperwork is not attached to the packet, even if the actual screening was completed on time. Compl. ¶ 32. In addition, the Defendants will reject a MEDI admission if the packet is missing any financial information. *Id.* ¶ 38. The agencies have also rejected MEDI admissions when the resident's name is misspelled or where there is a "transposition of digits in the ICD code." *Id.* ¶¶ 48-49. When these denials happen, the individual applicants are not given notice or an opportunity to appeal their MEDI admission denial. *Id.* ¶ 54. As of 2018, however, nursing home facilities do allegedly receive notice of MEDI denials; the State apparently sends out a rejection letter saying that "this is not a decision on an individual's Medicaid eligibility and, therefore, is not appealable through the Department of Human Services Bureau of Hearings." *Id.* ¶¶ 53-55, 91. In any event, after a rejection, a new MEDI admission packet with the correct information must be submitted for the resident, and if the later application is approved, the reimbursements begin on the later date. *Id.* ¶¶ 27, 47.

The Plaintiffs allege that these MEDI rejections, coupled with the lack of notice and opportunity to be heard, functionally allow Defendants "to avoid paying for care for Medicaid approved beneficiaries." Compl. at 2. From the perspective of the

Plaintiffs, a rejection of a MEDI admission constitutes either a denial of an application for long-term care benefits (or a withdrawal of those benefits if the resident had previously been approved for them). *Id.* ¶¶ 97, 110, 139, 151, 165. The result, Plaintiffs allege, is that they are "unable to pay for their room, board, care and services at their facilities during their period of Medicaid ineligibility," and they are thus "at risk of being discharged from their facilities." *Id.* ¶¶ 71-72.

Seeking injunctive and declaratory relief, the Plaintiffs assert three claims based on the Defendants' rejections of MEDI admission packets. First, the Plaintiffs (invoking 42 U.S.C. § 1983) allege that the agencies have violated their due-process rights by rejecting the MEDI admission packets without providing the Plaintiffs notice or an opportunity to be heard. Compl. ¶ 278. The Plaintiffs also allege that the agencies have violated the medical-assistance and nursing-facility provision of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(4)(A), as well as the reasonable-promptness provision of the same statute, 42 U.S.C. § 1396a(a)(8). Compl. ¶¶ 287, 292. The agencies have moved to dismiss all claims for lack of standing and failure to state a claim. Defs.' Mot. Dismiss.

## II. Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of a claim where there is a lack of subject matter jurisdiction. A motion under 12(b)(1) can also seek to dismiss a claim for lack of standing. *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). In ruling on a motion to dismiss for lack of standing, the Court must accept as true all material

5

allegations of the complaint, drawing reasonable inferences in the plaintiffs' favor. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (cleaned up). The plaintiffs bear the burden of establishing the required elements of standing. *Id.* (cleaned up).

The question of Article III standing is one of jurisdiction, and addresses "whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (cleaned up). Under Article III of the Constitution, federal jurisdiction is limited to claims presenting a case or controversy between the plaintiff and the defendant. *Id.* In order to establish constitutional standing, the party invoking federal jurisdiction must demonstrate "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (cleaned up). That being said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

This case boils down to the following allegation: HFS and DHS are ostensibly doing their jobs by approving applications for long-term care benefits under Medicaid, but when it comes time to actually reimburse nursing homes for providing those benefits to eligible recipients, the agencies invoke petty reasons to reject the MEDI admission packets submitted by nursing homes, fail to notify the actual beneficiaries about the MEDI rejections, and thus successfully circumvent their duty to pay for approved long-term care benefits. R. 16, Pls.' Resp. Br. at 7. In essence, the Plaintiffs claim that the rejection of the MEDI admissions amounts to a functional rejection of their long-term care applications; after all, merely *approving* a long-term care application is meaningless if there is no way for the beneficiary to actually *receive* those benefits. As mentioned above, the Plaintiffs assert a constitutional procedural

due process claim as well as statutory claims under the Medicaid Act. Compl. ¶¶ 278, 287, 292.

The agencies do not deny (for purposes of the dismissal motion) that they have rejected MEDI admission packets and that they have failed to provide notice of those rejections to the individual nursing home residents who are eligible to receive long-term care. The agencies also do not deny that the Plaintiffs do have a legally protected property interest in their long-term care benefits.[5] R. 29, Defs.' Reply Br. at 2. But none of that matters, the agencies argue, because at the end of the day, a rejection of a MEDI admission packet does *not* amount to a denial or withdrawal of long-term care benefits. *Id.* For instance, the MEDI process does not affect the eligibility determination for any individual resident. R. 12, Def. Br. at 2-3. Most importantly, the Defendants point to the undisputed fact that all 13 Plaintiffs were receiving the long-term care benefits that they are entitled to. Def. Reply Br. at 2. Specifically, the Defendants note that all of the Plaintiffs are living in nursing homes, and none of the Plaintiffs have been involuntarily discharged from their respective nursing facilities. Def. Br. at 5, 7-8. Thus, the agencies maintain that the Plaintiffs have no standing to bring these claims. *Id.* at 7. If anything, the Defendants argue, this is at most a billing dispute between the agencies and the nursing *facilities*, and even then, there is no case between Defendants and the nursing home *residents*. *Id.*

---

[5]Indeed, the parties agree that this case is not about the initial Medicaid eligibility applications; to the extent that the Plaintiffs are claiming that their *eligibility determinations* have been delayed or that they have not received notice or an opportunity to be heard, that is the subject of a different class-action lawsuit, *Koss v. Norwood*, 305 F. Supp. 3d 897 (N.D. Ill. 2018). This case is specifically about the MEDI admission packets required for nursing homes to receive payments for providing long-term care to beneficiaries.

On the question of standing, the agencies are correct. "To establish standing, a plaintiff must show (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury." *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir. 2001). And to establish standing for prospective injunctive relief in particular, "a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic*, 851 F.3d at 738.

The Plaintiffs are adamant that the MEDI admission rejections (and lack of accompanying notice or opportunity to be heard) constitute a withdrawal or denial of their long-term care benefits. Pl. Resp. Br. at 7. As a threshold matter, neither side presents a clear picture on the exact relationship between the MEDI admission process and the long-term care application process. Some Plaintiffs specifically allege that they were approved for long-term care prior to entering a nursing home, Compl. ¶¶ 1, 80, 88, so for those Plaintiffs, the long-term care application and the admission process do seem to be separate events. But for other Plaintiffs, the boundary between the two processes is less clear. The Defendants acknowledge, for instance, that for a

9

small proportion of residents who were already approved for Medicaid upon entering a nursing home but had not yet requested long-term care, the MEDI admission process "can be considered an application for long-term care." Defs.' Br. at 8.

The Plaintiffs, for their part, frequently conflate the two processes, referring to MEDI admissions and long-term care applications interchangeably; according to the Plaintiffs, a rejection of a MEDI admission means the same thing as a rejection of a long-term care application. *See* Compl. ¶¶ 97, 110, 139, 151, 165. As a result, it is difficult to determine where the Plaintiffs' factual allegations end and where their proposed legal conclusions begin: for instance, when the Plaintiffs state that a MEDI admission rejection constitutes a denial of long-term care benefits, are they alleging as a *factual* matter that the MEDI admission process is the same as the long-term care application process (for at least some, if not all, Plaintiffs), or are they making a legal argument that an admission rejection is *functionally* the same as a benefits rejection? At the end of the day, though, it is not really necessary to untangle the exact factual framework and where each individual Plaintiff fits within it, because there is no dispute that all 13 Plaintiffs have been *receiving* the long-term care services that they are entitled to. *Id.* ¶¶ 74, 86, 102, 114, 127, 143, 155, 169, 181, 196, 211, 228, 243.

The Plaintiffs maintain that they have been injured and that standing is thus satisfied. In support, they cite *Banks v. Sec'y of Indiana Family & Soc. Servs. Admin.*, 997 F.2d 231, 238-39 (7th Cir. 1993), in which the Seventh Circuit held that there *was* sufficient injury for Article III standing purposes where a state agency refused

to reimburse certain hospitals for medical bills on behalf of patients who were eligible for Medicaid and failed to provide notice to the Medicaid recipients. The Plaintiffs argue that, here, too, the state agencies are refusing to reimburse nursing homes for long-term care services on behalf of residents who have been approved for those benefits under Medicaid, *and* the agencies are failing to provide the residents with notice and an opportunity to be heard. Pl. Resp. Br. at 7.

But there is an important difference between the situation in *Banks* and the situation in this case. In *Banks*, because the state agency failed to reimburse the hospitals for the medical bills and provide notice to the Medicaid beneficiaries, the hospitals turned around and sued the beneficiaries for payment on those bills. *Banks*, 997 F.2d at 238-39. And the beneficiaries in turn had to defend against those legal claims without an understanding of whether they were truly liable for or had any basis to challenge the medical bills—because they never received notice that the state agency had refused to reimburse the hospitals. *Id*.

Here, by contrast, nothing has happened to the Plaintiffs (at least based on the current version of the allegations). For instance, there is no allegation that any of the 13 Plaintiffs have been personally billed by any of the nursing homes for the long-term care that they are entitled to (which would make this case analogous to *Banks*). Nor is there any allegation that any of the Plaintiffs have been cut-off (or threatened to be cut-off) from their long-term care benefits in any way. Rather, the Complaint is quite clear that all Plaintiffs are currently living in nursing homes and receiving long-term care, and that they continued to receive care throughout the relevant time

11

period discussed in the Complaint. *See* Compl. ¶¶ 74, 86, 102, 114, 127, 143, 155, 169, 181, 196, 211, 228, 243. The only issue here is that the state should presumably be paying for those long-term care benefits, as opposed to leaving the individual nursing homes to foot the bill for Medicaid benefits themselves. But, as the Defendants point out, the standing for that claim belongs to the *nursing homes*, not the residents. The residents themselves have failed to allege any injury stemming from their claims against the state agencies.

The Court acknowledges that there is a sense in which the only thing separating this case from a case in which standing is satisfied is the presumable goodwill of the individual nursing homes, which have elected to continue providing long-term care benefits despite receiving no reimbursements from the Defendants— but precisely because of that, the individual beneficiaries have not yet been injured (or received any threat of prospective injury, as far as the allegations go). What's more, since the filing of the Complaint, it appears that Defendants have actually gone back and approved (and backdated) the MEDI admissions for most of the Plaintiffs. R. 29-1, McCurdy Aff. ¶ 5; R. 29-2, Canty Aff. ¶¶ 6-18. The Plaintiffs correctly argue that agencies should not be insulated from liability for delaying, rejecting, and providing no notice on MEDI admissions simply because they corrected their conduct after the lawsuit was filed. R. 37, Pls.' Sur-Reply Br. at 11. But again, the problem is that the Plaintiffs have failed to allege that they themselves suffered any injury. The same goes for the now-deceased Plaintiffs. To the extent that Donovan, Grider, or Lane (who passed away before the filing of the Sur-Reply) suffered cognizable injuries

12

before they passed away, their claims are not mooted by their deaths. But at this juncture, all the Complaint really alleges is that they did receive long-term care services, and there is no reference to them being billed for those services or threatened with discharge by their nursing homes. So, without more, the Plaintiffs have failed to sufficiently allege injury for purposes of standing.

The Plaintiffs do briefly allege that they are "unable to pay for their room, board, care and services at their facilities during their period of Medicaid ineligibility," and they are thus "at risk of being discharged from their facilities." Compl. ¶¶ 71-72. But this is too vague of a basis to infer injury. Does "unable to pay" mean that Plaintiffs have been billed for the long-term care services and now owe the nursing homes money? Or is it simply a statement that the Plaintiffs, *if* faced with a payment demand, would be "unable to pay" and would thus be "at risk" of discharge? Similarly, on the "risk of being discharged" point, it is not clear whether the Plaintiffs are simply referring to a general looming possibility of discharge, or if they have actually been threatened with discharge by their nursing homes. Injury cannot be "merely conjectural or hypothetical." *Simic*, 851 F.3d at 738. Thus, both the due process and the statutory claims must be dismissed for lack of standing.

## IV. Conclusion

The motion to dismiss is granted for lack of standing. The dismissal is without prejudice, however, and the Plaintiffs may attempt to amend the Complaint to include specific allegations related to any injuries that *they themselves* suffered, or were at concrete risk of suffering, as a result of the denial of their MEDI admission

packets. If the Plaintiffs wish to file an amended complaint, they must do so by September 23, 2020. Absent an amended complaint, the dismissal will convert to a dismissal with prejudice and judgment will be entered.[6] The status hearing of September 11, 2020 is reset to October 2, 2020 at 8:30 a.m., but to track the case only (no appearance is required, the case will not be called).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 3, 2020

---

[6]In light of the passing of Donovan, Grider, and Lane, those claims will be dismissed under Civil Rule 25(a)(1).